JOHN L. BURRIS, ESQ. (SBN 69888)
BEN NISENBAUM, ESQ. (SBN 222173)
BRANDON YEE, ESQ. (SBN 344583)
BURRIS, NISENBAUM, CURRYAND LACY, LLP
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (844) 273-6873
john.burris@bncllaw.com
ben.nisenbaum@bncllaw.com
brandon.yee@bncllaw.com

K. CHIKE ODIWE, ESQ. (SBN 315109)
LAW OFFICES OF KENNETH CHIKE ODIWE, PC
2880 Zanker Road Suite 203, PMB 1689
San Jose, CA 95134-2122
Telephone: (669) 315-4431
Facsimile: (669) 315-4431
kenneth@kennethodiwelaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOLA DAVIS, individually and as a successor-in-interest to Decedent THOMAS EARL DAVIS, JAYDEN DAVIS, individually and as a successor-in-interest to Decedent THOMAS EARL DAVIS, KEYMARI DAVIS, individually and as a successor-in-interest to Decedent THOMAS EARL DAVIS, and O.D. by and through her Guardian ad Litem, MARGRETTE DAVIS, individually and as a successor-in-interest to Decedent THOMAS EARL DAVIS <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF SOLANO, a municipal corporation; CORRECTIONAL HEALTH CARE SERVICES, a healthcare corporation; | CASE NO.: <br><br><br> COMPLAINT FOR WRONGFUL DEATH AND DAMAGES <br> (42 U.S.C §§ 1983, 1988; and pendent tort claims) <br><br> **JURY TRIAL DEMANDED** |

NATHANIEL CARDOZA, individually and in his official capacity as a correctional officer for the Solano County Sheriff's Department; ZACHARY COURTNEY, individually and in his official capacity as a correctional officer for the Solano County Sheriff's Department; RICKY PEREZ, individually and in his official capacity as a correctional officer for the Solano County Sheriff's Department; DANI HUNT, individually and in his official capacity as a correctional officer for the Solano County Sheriff's Department; ALEXANDER SMITH, individually and in his official capacity as a correctional officer for the Solano County Sheriff's Department; RYAN LAQUINDANUM, individually and in his official capacity as a correctional officer for the Solano County Sheriff's Department; COLTON PHELPS, individually and in his official capacity as a correctional officer for the Solano County Sheriff's Department and DOES 1-50, inclusive,

Defendants.

## **INTRODUCTION**

1. On September 25, 2023, Decedent Thomas Earl Davis, was found dead in his cell at Solano County jail after a prolonged mental health crisis. Davis died after defendants failed to supervise and/or treat him according to the law and the appropriate protocols.

2. This civil rights and wrongful death action seeks compensatory and punitive damages from Defendants for violating the Fourteenth Amendment under the United States Constitution and California state law in connection with the death of Thomas Earl Davis, who died because of the unlawful and/or negligent conduct by Solano County Sheriff's Department and their contracted correctional medical staff, Correctional Health Care Services.

3. This action seeks to recover damages for the violation of rights of Decedent's surviving successors-in-interest.

## JURISDICTION

4. This action arises under Title 42 of the United States Code, § 1983. Title 28 of the United States Code, §§ 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in the County of Solano, California, which is within the judicial district of this Court. This Court also has supplemental jurisdiction over Plaintiffs state law causes of action under 28 U.S.C. § 1367.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

6. Decedent THOMAS EARL DAVIS (hereinafter "Decedent") was an individual residing in the State of California. Decedent was unmarried at the time of his death and died intestate.

7. Plaintiff LEOLA DAVIS (hereinafter "Plaintiff Leola Davis") is the surviving mother of Decedent THOMAS EARL DAVIS and is a citizen of the United States. Plaintiff brings these claims individually and as a successor-in-interest to Decedent THOMAS EARL DAVIS.

8. Plaintiff JAYDEN DAVIS (hereinafter "Plaintiff Jayden Davis") is the surviving son of Decedent THOMAS EARL DAVIS and is a citizen of the United States. Plaintiff brings these claims individually and as a successor-in-interest to Decedent THOMAS EARL DAVIS.

9. Plaintiff KEYMARI DAVIS (hereinafter "Plaintiff Keymari Davis") is the surviving daughter of Decedent THOMAS EARL DAVIS and is a citizen of the United States. Plaintiff brings these claims individually and as a successor-in-interest to Decedent THOMAS EARL DAVIS.

10. Plaintiff O.D. by and through her Guardian ad Litem, MARGRETTE DAVIS (hereinafter "Plaintiff O.D.") is the surviving daughter of Decedent THOMAS EARL DAVIS and is a citizen of the United States. Plaintiff brings these claims individually and as a successor-in-interest to Decedent THOMAS EARL DAVIS.

11. COUNTY OF SOLANO (hereinafter "County") is an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant County has possessed the power and authority to adopt policies and

prescribe rules, regulations and practices affecting the operation of the County of Solano's Sheriff's Department and its tactics, methods, practices, customs and usage. At all relevant times, Defendant County was the employer of DOES Defendants, individually and as law enforcement officers.

12. CORRECTIONAL HEALTH CARE SERVICES (hereinafter "CHS") is a healthcare entity contracted by Defendant County that provides care that includes medical and mental health services to County's incarcerated population.

13. Defendant NATHANIEL CARDOZA (hereinafter "Defendant Cardoza"), was a correctional officer for the Solano County Sheriff's Department, and is sued individually and in his official capacity.

14. Defendant ZACHARY COURTNEY (hereinafter "Defendant Courtney"), was a correctional officer for the Solano County Sheriff's Department, and is sued individually and in his official capacity.

15. Defendant RICKY PEREZ (hereinafter "Defendant Perez"), was a correctional officer for the Solano County Sheriff's Department, and is sued individually and in his official capacity.

16. Defendant DANI HUNT (hereinafter "Defendant Hunt"), was a correctional officer for the Solano County Sheriff's Department, and is sued individually and in his official capacity.

17. Defendant ALEXANDER SMITH (hereinafter "Defendant Smith"), was a correctional officer for the Solano County Sheriff's Department, and is sued individually and in his official capacity.

18. Defendant RYAN LAQUINDANUM (hereinafter "Defendant Laquindanum"), was a correctional officer for the Solano County Sheriff's Department, and is sued individually and in his official capacity.

19. Defendant COLTON PHELPS (hereinafter "Defendant Phelps"), was a correctional officer for the Solano County Sheriff's Department, and is sued individually and in his official capacity.

20. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each defendant so named is responsible in some manner for the

injuries and damages sustained by Plaintiffs as set forth herein.  Plaintiffs will amend this Complaint to state the names and capacities of DOES 1-50, inclusive, when they have been ascertained.

## ADMINISTRATIVE PREREQUISITES

21.    Plaintiffs are required to comply with an administrative tort claim requirement under California law.  Plaintiffs have exhausted all administrative remedies pursuant to California Government Code Section 910.  Plaintiffs filed an administrative claim with the County of Solano on March 19, 2024. The claim was rejected by the County on April 2, 2024.

## PRELIMINARY ALLEGATIONS

22.    The County is a public entity and is sued under Title 42 U.S.C. § 1983 for violations of the Fourteenth Amendments of the United States Constitution, California state law, the California Tort Claims Act, and the Government Code for the acts and omissions of Defendant  DOES 1-25, and each of them, who at the time they caused Plaintiff and Decedent's injuries, damages and death, were duly appointed, qualified and acting officers, employees, and/or agents of County and acting within the course and scope of their employment and/or agency.  In engaging in the conduct described herein, Defendant  DOES 1-25, inclusive, exceeded the authority vested in them as public employees under the United States and California Constitutions and as officers employed by Defendant County.

23.    Plaintiffs allege that the conduct of each defendant deprived Decedent of his constitutional right to life, his constitutional right to medical and mental health care for his serious but treatable medical and mental health needs, as well as custodial care and supervision, and caused Decedent to suffer grievous harm and physical, psychological, and mental injuries prior to his death, and ultimately caused his death while she was in the custody of Defendants.

24.    Each of the Defendants caused and are responsible for the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and

maintain proper and adequate policies, procedures and protocols, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers and employees under their direction and control.

25. Whenever and wherever reference is made in this Complaint to any act by Defendants County of Solano Sheriff's Department Officers DOES 1-25, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant and DOE Defendants individually, jointly or severally.

**GENERAL ALLEGATIONS**

26. This case arises out of the wrongful death of Decedent Thomas Earl Davis. On September 10, 2023, the Solano County Sheriff's office arrested Decedent. The Sheriff's office housed Decedent on the second level, E Module, Cell 16 of the main jail located at 500 Union Avenue, Fairfield, California. During Decedent's incarceration he continued to display increasing and obvious signs that demonstrated a mental health crisis. The signs of Decedent's worsening mental health were witnessed by Defendants Cardoza, Courtney, Perez, Hunt, Smith, Laquindanum, Phelps, as well as multiple yet-to-be identified members of the County's correctional medical staff. The Solano County Sheriff's Department released Decedent on September 13, 2023 in connection with the charges they took him into custody for on September 10, 2023, however, the Solano County Sheriff's office held Decedent in custody pending an evaluation by FTT/ Solano County Behavioral Health pursuant to 4011.6PC and 5150WI. The County booked Decedent on September 20, 2023, on a separate and additional charge. During said time, Decedent remained medically unattended to while he remained in the midst of a mental health crisis. Throughout his incarceration with the Solano County Sheriff's Department, Decedent demonstrated clear signs that he continued to suffer from a worsening mental health crisis. Defendants Cardoza, Courtney, Perez, Hunt, Smith, Laquindanum, Phelps, as well as multiple yet-to-be identified members of the County's correctional medical staff failed to adequately react to Decedent's mental health emergency.

27. On September 25, 2023, Decedent was found dead in his cell from an apparent suicide while suffering from a mental emergency.

28. Defendants caused Decedent's death by failure to treat and monitor Decedent's worsening condition, where he continued to exhibit obvious signs that he was suffering from a mental health crisis. County failed to address Decedent's declining medical condition according to their protocol and training. Said disregard of their training and protocol lead to Decedent's death.

29. County, CHS, and their Policymaking and Supervisory Defendants failed to adequately train officers and employees in suicide prevention.

30. County, CHS, and their Policymaking and Supervisory Defendants failed to train officers and employees in suicide prevention policies and procedures.

31. County, CHS, and their Policymaking and Supervisory Defendants failed to train officers and employees to properly monitor and to protect inmates.

32. County, CHS, and their Policymaking and Supervisory Defendants failed to train officers and employees to properly identify and monitor at-risk inmates.

33. County, CHS, and their Policymaking and Supervisory Defendants failed to train officers and employees in in-take procedure.

34. County, CHS, and their Policymaking and Supervisory Defendants failed to enforce policies and procedures for suicide prevention, including, but not limited to, policies and procedures for inmate in-take and monitoring of inmates.

35. County, CHS, and their Policymaking and Supervisory Defendants failed to enforce the aforesaid policies and procedures by disciplining officers and employees or by other means.

36. County, CHS, and their Policymaking and Supervisory Defendants caused, permitted, and allowed a custom and practice of continued and persistent deviations from policies and procedures.

37. County, CHS, and their Policymaking and Supervisory Defendants maintained inadequate suicide prevention policies and procedures which, failed to identify and/or monitor at-risk detainees.

38. County, CHS, and their Policymaking and Supervisory Defendants maintained inadequate in-take policies and procedures, which failed to identify at-risk detainees and failed to identify and monitor prescription medication and treatment.

39. County, CHS, and their Policymaking and Supervisory Defendants maintained inadequate monitoring and safety check systems.

40. County, CHS, and their Policymaking and Supervisory Defendants maintained a policy of placing inmates into solitary confinement with ready means to commit acts of self-harm, without adequate review by a mental health provider prior to such a placement.

41. County, CHS, and their Policymaking and Supervisory Defendants failed to create systems of information sharing, communication, and clearly delineated roles and lines of authority for County Jail staff, medical providers, and officers bringing in detainees from the street, or other facilities, and/or courts.

42. County, CHS, and their Policymaking and Supervisory Defendants failed to provide sufficient resources to provide for the necessary medical care for mentally ill inmates.

43. County, CHS, and their Policymaking and Supervisory Defendants maintained a policy of using cursory mental health and suicide screening that essentially amounted to no screening at all for incoming inmates.

44. County, CHS, and their Policymaking and Supervisory Defendants maintained a policy of not regularly monitoring inmates.

45. County, CHS, and their Policymaking and Supervisory Defendants maintained a policy of ignoring and refusing to implement relatively inexpensive suicide prevention measures.

46. County, CHS, and their Policymaking and Supervisory Defendants maintained a policy of refusing to allow inmates to obtain medically necessary prescribed medication.

47. County, CHS, and their Policymaking and Supervisory Defendants maintained no established protocol--written or unwritten--regarding the monitoring or medical treatment of withdrawal syndrome, and otherwise refuses to acknowledge the well-known dangers attendant withdrawal syndrome, including increased suicide risk.

48. County, CHS, and their Policymaking and Supervisory Defendants maintained a policy of permitting employees to provide clearly inadequate suicide prevention care.

49. A death in a correctional facility is a very serious incident. A death by suicide or diabetes complications typically causes an incident review to occur which includes a complete

accounting of what happened, what lessons can be learned from the event and what changes need to be made in order decrease the likelihood that it occurs again. Had County and CHS officials had an adequate policy in place to review previous incidents of deaths by suicide or medical neglect, accommodations could have been made that would have kept Decedent safe and alive.

50. Nothing is more fundamental in corrections work than regular safety checks to make sure the inmates are safe. County, CHS, and their Policymaking and Supervisory Defendants failed to have the appropriate policy in place in this regard. Had County, CHS, and their Policymaking and Supervisory Defendants kept their policies updated to reflect common correctional practices and standards, Decedent's death would more than likely have been prevented.

51. Each of the above policies and established practices amounts to negligence and deliberate indifference to the known and/or obvious risk of suicide and serious medical and safety needs of at-risk detainees, including Decedent.

52. County employees and subcontractors deliberately did not comply with formal policies and national standards, which evidences their deliberate indifference and negligence.

53. Defendants have been negligent, grossly negligent, and have showed deliberate indifference to the medical and safety needs of the inmates at the Jail. This includes, again, failing to have and follow proper training, policies, and procedures for the care and treatment of people in the Jail. It also includes a cold-hearted attitude on the part of staff and subcontractors, who ignore medical and safety harms as they present and who turn a blind eye and a deaf ear to people who have serious medical and safety needs.

54. Each and every individually named Defendant had knowledge that a substantial risk of serious harm existed as to Decedent's health and safety.

55. County, CHS, and their Policymaking and Supervisory Defendants had knowledge that their policies, customs, and/or protocols created a substantial risk of serious harm as to Decedent's health and safety. But even if these Defendants did not have knowledge of the risk of harm, the risk created by their policies, customs, and/or protocols-and lack thereof/lack of training thereon/lack of funding to implement-was obvious in light of reason and the basic general knowledge that Defendants are presumed to have obtained regarding the type of deprivation.

56. The acts and omissions caused by Defendants through their policies, practices, customs-including inadequate staffing, training, preparation, procedures, supervision, and discipline-were a proximate cause of Decedent's pain, suffering, death, and Plaintiffs' damages.

57. Decedent's death was the proximate result of Defendant County's failure to implement and enforce generally accepted, lawful policies and procedures at the jail, and allowing and/or ratifying the deliberate indifference to the serious medical needs of inmates. These substantial failures reflect Defendant County's policies implicitly ratifying and/or authorizing the deliberate indifference to serious medical needs and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline deputy sheriffs employed by Defendant County.

58. Plaintiff is informed and believes and thereon alleges that members of the County of Solano County Sheriff's Department, including, but not limited to DOES 1-25, CHS, and/or each of them, have individually and/or while acting in concert with one another, engaged in a repeated pattern and practice of disregarding the medical needs and constitutional rights of individuals, including, but not limited to Decedent.

59. Plaintiff is further informed, believes and thereon alleges that County knew or had reason to know by way of actual or constructive notice of the aforementioned policy, culture, pattern and/or practice and the complained of conduct and resultant injuries/violations.

60. At all material times, and alternatively, the actions of each Defendant were conscience-shocking, reckless, deliberately indifferent to Decedent's and Plaintiff's rights, negligent, and objectively unreasonable.

## **DAMAGES**

61. Plaintiffs were mentally and emotionally injured and damaged as a proximate result of Decedent's wrongful death, including, but not limited to, the loss of Decedent's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses.

62. Plaintiffs are entitled to recover wrongful death damages pursuant to C.C.P. Sections 377.60 and 377.61 and Probate Code Section 6402(b).

63. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of decedent, under the law. Plaintiffs are therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section 1988.

## FIRST CAUSE OF ACTIO
### (42 U.S.C. § 1983)
### (Against Defendants Cardoza, Courtney, Perez, Hunt, Smith, Laquindanum, Phelps, and DOES 1-25)

64. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 63 of this Complaint.

65. By the actions and omissions described above, Defendants violated 42 U.S.C. § 1983, depriving Plaintiff of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendments to the United States Constitution:

    a.    The right to be free from deliberate indifference to Decedent's serious medical needs while in custody as secured by the Fourteenth Amendment; and

    b.    The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the Fourth, and Fourteenth Amendments, and as secured by California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq.

66. At the time Decedent was detained by County, it was clearly established in the law that the Fourteenth Amendment imposes a duty on jail officials to provide humane conditions of confinement, including adequate medical and mental health care, and to take reasonable measures to guarantee the safety of the inmates, including from self-harm. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth herein.

67. Being subjected to unnecessary physical and mental pain and suffering is simply not part of the penalty that criminal offenders pay for their offenses against society. As a result, municipalities, Jail officials, and subcontractors are liable if they know that an inmate or inmates face

a substantial risk of serious harm and callously disregard that risk by failing to take reasonable measures to abate it.

68. Defendants knew that Decedent faced a substantial risk of suicide or mental pain and anguish, yet callously disregarded that risk by failing to take reasonable measures to abate it.

69. Defendants knew that Decedent faced a substantial risk of harm or death due to his serious mental health condition, yet callously disregarded that risk by failing to take reasonable measures to abate it.

70. Having an inmate in custody creates a duty of care that must include enough attention to mental health concerns that inmates with obvious symptoms receive medical attention. Defendants had numerous opportunities to meet their responsibilities to help Decedent, but no one did.

71. Here, County, CHS, and their Policymaking and Supervising Defendants knew of and callously disregarded the excessive risk to inmate health and safety caused by their inadequate formal and informal policies, including a lack of training, funding, and supervision.

72. County, CHS, and their Policymaking and Supervising Defendants knew of this excessive risk to inmate health and safety because it was obvious and because numerous other inmates had been injured and/or killed because of these inadequacies in the past.

73. County, CHS, and their Policymaking and Supervising Defendants were responsible for a policy, practice, or custom of maintaining a longstanding constitutionally deficient safety and medical and mental health care, and training thereon, which placed inmates like Decedent at substantial risk.

74. There was little to no supervision of Decedent and inmates like him because County, CHS, and their Policymaking and Supervising Defendants maintained a known policy and custom of providing the cheapest care available, cutting corners to save and/or make money. That this would result in serious injury or death would have been obvious to any corrections management official exercising his or her professional judgment.

75. While it appears that Solano County did have a suicide prevention policy, Solano County's actual policy was to ignore the written policy--written policy intended to protect inmates from the foreseeable consequences of not following the written policy, including death by suicide.

76. County, CHS, and their Policymaking and Supervising Defendants also has an impermissible policy of using cursory mental health screenings and check-box determinations to determine that mentally ill inmates are not a danger to themselves.

77. County, CHS, and their Policymaking and Supervising Defendants had an unwritten policy of understaffing and indifference to inmate supervision that was maintained with deliberate indifference. County, CHS, and their Policymaking and Supervising Defendants know that the Jail is understaffed and/or undertrained, and that their employees often have trouble completing all of their duties as a result. Yet these Defendants failed to take any steps to correct these inadequacies.

78. Defendants were subjectively aware that Decedent was suicidal, or at a minimum in the midst of a mental health crisis and medical emergency. From this evidence, a reasonable jailer and/or healthcare provider would have been compelled to infer that a substantial risk of serious harm existed. Indeed, Defendants failed to take reasonable any steps to alleviate this risk. Decedent died as a result.

79. Defendants had a policy, custom, and practice of denying treatment, such as prescribed medication; these policies, customs, and practices posed a substantial risk of serious harm to the inmates in the jail, including Decedent, and Defendants knew that its policies, customs, and practices posed this risk.

80. Defendants knew of a number of previous suicides and incidences of self-harm, yet deliberately did nothing to provide its personnel with adequate training to prevent future suicides and incidences of self-harm. Instead, Defendants acquiesced in a long-standing policy and custom of inaction.

81. Even without the previous in-custody deaths, it was obvious that a total lack of training to appropriately address mentally ill inmates and efforts at cost-cutting would result in the harm caused here. County, CHS, and their Policymaking and Supervising Defendants were expressly informed that their official policies were being ignored and that its unofficial or de facto policies would result in inmate deaths, yet deliberately did nothing to address these unofficial or de facto policies. County, CHS, and their Policymaking and Supervising Defendants had numerous

opportunities to obtain training to appropriately address physically and mentally ill inmates, but knowingly and deliberately declined to obtain it.

82. County, CHS, and their Policymaking and Supervising Defendants have consistently failed to attend to the serious medical needs of inmates. County, CHS, and their Policymaking and Supervising Defendants knew that there were successful suicides in recent years, and that there were relatively inexpensive prevention measures available. Yet these Defendants did not employ any of these measures. In addition, these Defendants knew that its employees were not providing adequate suicide prevention care, but continued to employ them nonetheless.

83. The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California Code of Civil Procedure §§ 377.20 et seq., and other state and federal law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
**(42 U.S.C. § 12132)**
**(Against Defendants County, CHS, Cardoza, Courtney, Perez, Hunt, Smith, Laquindanum, Phelps, and DOES 26-50)**

84. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 83 of this Complaint.

85. The Americans with Disabilities Act ("ADA") provides in its relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A failure to reasonably accommodate a person's disability is an act of discrimination under the ADA. Per 28 C.F.R. § 35.130(b)(7): "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

86. CHS operated at the Jail under contract with County, and therefore is subject to Title II of the ADA.

87. County and CHS failed to institute adequate policies and procedure or train its employees on how to accommodate individuals with disabilities, such as Decedent.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**(29 U.S.C. § 701)**
**(Against Defendants County, CHS, and DOES 26-50)**

88. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 87 of this Complaint.

89. Like the ADA, Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 701, et seq., also requires the recipients of federal funds to reasonably accommodate persons with disabilities. The Jail is believed and therefore alleged to receive federal funds.

90. CHS operated at the Jail under contract with County, and therefore is subject to Section 504 of the RA.

91. County and CHS failed to institute adequate policies and procedure or train its employees on how to accommodate individuals with disabilities, such as Decedent.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(*Monell* - 42 U.S.C. § 1983)**
**(Against Defendants County and DOES 26-50)**

92. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 91 of this Complaint.

93. The unconstitutional actions and/or omissions of Defendants DOES 26-50, as well as other officers employed by or acting on behalf of the Defendants County, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the County, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the County and its Sheriff's Department:

a. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling treatable life threatening conditions;

b.  To deny inmates at the County's jail access to appropriate, competent, and necessary care for serious medical needs;

c.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons with serious medical conditions at the County Jail;

d.  To cover up violations of constitutional rights by any or all of the following:

i.  By failing to properly investigate and/or evaluate complaints or incidents of the handling persons with life threatening medical conditions;

ii.  By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful law enforcement activity; and

iii.  By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and sheriff's department personnel, whereby an officer or member of the sheriff's department does not provide adverse information against a fellow officer or member of the department; and

f.  To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct, including claims made under California Government Code §§ 910 et seq.

94.  Defendants County and DOES 26-50 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1-25, and other County, Sheriff's Department, with deliberate indifference to Plaintiff's constitutional rights, which were thereby violated as described above.

95.  The unconstitutional actions and/or omissions of Defendants DOES 1-25 and other Sheriff's Department personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the County and its Sheriff's Department. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the County, the Solano County Sheriff's Department, and that such policymakers have direct

knowledge of the fact that the death of Decedent was not justified, but rather represented an unconstitutional display of deliberate indifference to serious medical needs. Notwithstanding this knowledge, the authorized policymakers within the County, its Sheriff's Department have approved of DOES 1-25's conduct and decisions in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Decedent. By so doing, the authorized policymakers within the County and its Sheriff's Department have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants.

96. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants DOES 1-25 were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983.

97. Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

98. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants County, and DOES 1-25 as described above, Plaintiffs are entitled to damages, penalties, costs, and attorneys fees as set forth above in this Complaint, and punitive damages against Defendants DOES 1-25 in their individual capacities.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(Wrongful Death - Negligence)**
**(C.C.P. §§ 377.60 and 377.61)**
**(Against Defendants County, CHS, Cardoza, Courtney, Perez, Hunt, Smith, Laquindanum, Phelps and DOES 1-25)**

99. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 98 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

100. Defendant County, by and through its agents and employees, the involved Defendant Officers' negligent actions and/or negligent failure to act, as set forth herein-above proximately caused the death of Decedent, Plaintiff's mother.

101. Jailers and medical and mental health staff's indifference to Decedent's serious medical and mental health needs was ratified by Supervisory and Policymaking Defendants and CHS.

102. Despite knowledge of Decedent's serious medical needs, jailers and medical and mental health staff failed to administer and attend to Decedent. As a result of the medical neglect, Decedent died.

103. As an actual and proximate result of said defendants' negligence, and the death of decedent, Plaintiff has sustained pecuniary loss resulting from the loss of comfort, society, consortium, attention, services, and support of her husband, decedent, in an amount according to proof at trial.

104. As a further actual and proximate result of said defendant's negligence, Plaintiffs have incurred funeral and burial expenses, in an amount according to proof at trial.

105. Pursuant to California C.C.P. Sections 377.60 and 377.61, Plaintiffs have brought this action, and claims damages from said defendants for the wrongful death of Decedent, and the resulting injuries and damages.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### (Violation of California Government Code § 845.6)
### (Against Defendants County, CHS, Cardoza, Courtney, Perez, Hunt, Smith, Laquindanum, Phelps and DOES 1-50)

106.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 105 of this Complaint.

107.    Defendants knew or had reason to know that Decedent needed immediate and higher-level medical care, treatment, observation, and monitoring. Defendants failed to monitor Decedent according to protocol. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendant County, knowing and/or having reason to know this, failed to take reasonable action to summon and/or provide Decedent access to such care and treatment in violation of California Government Code § 845.6.

108.    As legal cause of the aforementioned acts of all Defendants, Plaintiffs were injured as set forth above, and their losses entitle them to all damages allowable under California law. Plaintiffs sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### JURY DEMAND

109.    Plaintiffs hereby demand a jury trial in this action.

### PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1.    For general damages according to proof;

2.    For punitive damages and exemplary damages in amounts to be determined according to proof as to defendants Cardoza, Courtney, Perez, Hunt, Smith, Laquindanum, Phelps, and DOES 1 through 25 and/or each of them;

3.    For reasonable attorney's fees pursuant to 42 U.S.C. §1988;

4.    For cost of suit herein incurred;

5.    Declaratory and injunctive relief, including but not limited to the following:
    i.    An order requiring Defendants to institute and enforce appropriate and lawful policies and procedures for handling persons with serious medical needs.

ii.    An order prohibiting Defendants and their sheriff's from engaging in the "code of silence as may be supported by the evidence in this case.

iii.    An order requiring Defendants to train all medical professionals concerning generally accepted and proper tactics and procedures for the care and treatment of persons with serious medical needs.

6.    For such other and further relief as the Court deems just and proper.

**Burris, Nisenbaum, Curry and Lacy, LLP**

Dated:  August 12, 2024

_/s/ *John L. Burris*___
John L. Burris
Attorney for Plaintiffs